2010 ND 76

**Roland C. RIEMERS, Petitioner**

v.

**Henry J. ESLINGER, Grand Forks Municipal Judge and City of Grand Forks, Respondents.**

**No. 20090242.**

Supreme Court of North Dakota.

May 11, 2010.

Roland C. Riemers (argued), self-represented, Grand Forks, ND, petitioner.

Kristen S. Pettit (argued), City Prosecutor, Grand Forks, ND, for respondents.

KAPSNER, Justice.

[¶ 1] Roland Riemers filed a petition for supervisory writ with this Court, which we granted with regard to whether Riemers has a right of trial by jury under the Constitution of North Dakota for a non-

criminal municipal traffic citation punishable by a twenty-dollar fine. We hold the state constitution provides Riemers with the right to a jury trial for the citation and remand the case back to the Grand Forks municipal court for further proceedings consistent with this opinion.

## I.

[¶ 2] On July 22, 2009, Riemers was involved in a motor vehicle accident in Grand Forks. Following an investigation of the accident, a Grand Forks police officer cited Riemers for following too closely in violation of the Grand Forks City Code. Under the City Code's penalty schedule for traffic offenses, Riemers was subject to a twenty-dollar fine for the citation. *See* Grand Forks City Code § 8–1503(7). On July 31, 2009, Riemers pled not guilty to the citation in Grand Forks municipal court. Riemers also moved the municipal court to transfer the case to district court under N.D.C.C. § 40–18–15.1 to allow for a jury trial. The municipal court denied Riemers' motion. Riemers then filed a petition for supervisory writ with this Court. We granted the petition with regard to whether Riemers has a constitutional right to a jury trial for a noncriminal municipal traffic citation punishable by a twenty-dollar fine.

## II.

[¶ 3] The brief and relatively simple history of this case masks the significant questions it raises regarding the right of trial by jury in our state, which we long ago described as "the most important of constitutional rights." *Barry v. Truax*, 13 N.D. 131, 99 N.W. 769, 770 (1904).

## A.

[¶ 4] Under N.D.C.C. § 40–18–01, municipal judges have jurisdiction "to hear, try, and determine offenses against the ordinances of the city." When a city cites a person for violating a municipal ordinance, the procedure for contesting the citation depends upon its nature.

[¶ 5] A municipal judge may try cases regarding municipal ordinance citations without a jury if "the right to a jury trial does not otherwise exist" or "the defendant has timely and appropriately waived a right to a jury trial in writing...." N.D.C.C. § 40–18–15. Thus, if the right of trial by jury does not exist for a particular municipal ordinance violation, the municipal judge has the authority to conduct a bench trial. However, defendants in "criminal prosecutions" have the right to trial "by an impartial jury." N.D.C.C. § 29–01–06. Therefore, a defendant has the right to a jury trial if cited for violating a criminal municipal ordinance. To enforce this right, the defendant must make a written request to transfer the case from municipal court to district court. N.D.C.C. § 40–18–15.1. The case must be transferred because N.D.C.C. ch. 40–18 does not provide municipal courts with the authority to hold jury trials. *City of Bismarck v. Fettig*, 1999 ND 193, ¶ 4, 601 N.W.2d 247 (citing 1973 N.D. Sess. Laws ch. 327 (amending N.D.C.C. § 40–18–15 to eliminate language providing for jury trials in municipal courts)). If a criminal defendant complies with the statutory requirements regarding transfer, the district court holds a jury trial. If the defendant does not enforce the right to a jury trial for violating a criminal municipal ordinance, the municipal judge may conduct a bench trial. N.D.C.C. § 40–18–15. Where the municipal judge conducts a bench trial, the defendant may appeal an adverse judgment to district court "for trial anew." N.D.C.C. § 40–18–19. While the defendant may appeal the municipal judge's decision to district court, "waiver of jury trial in the municipal court pro-

ceeding also constitutes a waiver of jury trial in the district court." N.D.C.C. § 40–18–15.

[¶ 6] The vast majority of traffic offenses are "noncriminal." *See* N.D.C.C. § 39–06.1–02. Therefore, N.D.C.C. § 29–01–06 does not provide the right of trial by jury for most traffic citations. Nevertheless, where a driver is cited for violating a municipal traffic ordinance, the driver "may request a hearing on the issue of commission of the violation charged." N.D.C.C. § 39–06.1–03(1). The hearing may take place before a municipal judge. *See* N.D.C.C. §§ 39–06.1–02, 39–06.1–03(7). If the municipal judge finds the driver violated the municipal traffic ordinance, the driver "may . . . appeal that finding to the district court for trial anew." N.D.C.C. § 39–06.1–03(5)(a). Chapter 39–06.1, N.D.C.C., does not provide the right of trial by jury for noncriminal municipal traffic citations in either municipal court or district court.

[¶ 7] Riemers was cited for following too closely in violation of the Grand Forks City Code. This offense is considered "noncriminal" under N.D.C.C. § 39–06.1–02. Chapter 39–06.1, N.D.C.C., provides Riemers could challenge the citation by requesting a hearing and, if the municipal judge found he violated the ordinance, appeal the judge's decision to district court. Chapter 39–06.1, N.D.C.C., does not provide Riemers with the right of trial by jury before either court. Riemers did request a hearing regarding his traffic citation. Rather than contest the citation before the municipal judge, Riemers requested the municipal court transfer the matter to district court under N.D.C.C. § 40–18–15.1 to allow for a jury trial. The municipal court refused to transfer the case. Riemers then filed a petition for supervisory writ, arguing he has a right to a jury trial under the state constitution. Therefore, we must determine whether Riemers has a constitutional right to a jury trial when contesting a noncriminal municipal traffic citation punishable by a twenty-dollar fine.

**B.**

[¶ 8] The Constitution of North Dakota provides: "The right of trial by jury shall be secured to all, and remain inviolate." N.D. Const. art. I, § 13 (formerly § 7). This provision deprives the legislature and courts of all authority "to destroy by legislation or by judicial construction any of the substantial elements of the right of jury trial. . . ." *Barry*, 13 N.D. 131, 99 N.W. at 770. "[T]he framers of the Constitution intended by the adoption of said provision to preserve and perpetuate the right of trial by jury as it existed by law at and prior to the adoption of the Constitution." *Smith v. Kunert*, 17 N.D. 120, 115 N.W. 76, 77 (1907). *See also Barry*, at 771 ("The fact that the Constitution secures 'the right of trial by jury' by simply declaring it . . . is significant . . . of an intent [by the drafters] to merely perpetuate the right as it then existed and was known to the people who gave to the Constitution their approbation.").

[¶ 9] As a result, "the right of trial by jury which is secured by the Constitution is the right of trial by jury with which the people who adopted it were familiar . . . as defined by the statutes which existed prior to and at the time of the adoption of the Constitution." *Barry*, 99 N.W. at 772. *See also Interest of R.Z.*, 415 N.W.2d 486, 488 n. 1 (N.D.1987) ("We have said that [a]rt. I, § 13 preserves the right to jury trial in all cases in which there was a right to jury trial at the time our constitution was adopted."); *City of Bismarck v. Altevogt*, 353 N.W.2d 760, 764 (N.D.1984) (stating art. I, § 13 "preserves the right of trial by jury as it existed at the time of the adoption of our state constitution");

*Smith,* 17 N.D. 120, 115 N.W. at 78 (providing courts must construe the constitutional right of trial by jury "in the light of the existing practice as established by law at the time of [the state constitution's] adoption. . . ."). Therefore, in interpreting the application of art. I, § 13 to violations of municipal ordinances, we examine the right of trial by jury as of 1889, the year our state adopted its constitution. *Fettig,* 1999 ND 193, ¶ 7, 601 N.W.2d 247.

[¶ 10] The Compiled Laws of the Territory of Dakota (1887), "the law of the territory just prior to and at the time that North Dakota became a state and adopted its constitution in 1889, defines the right to trial by jury as it existed under such law prior to and at the time of the adoption of [a]rt. I, § 13." *Altevogt,* 353 N.W.2d at 764. Under the Compiled Laws, the "city justice of the peace" had exclusive jurisdiction over municipal ordinance violations. C.L. § 925 (1887). The Compiled Laws provided the right of trial by jury before city justices of the peace under certain, enumerated circumstances:

> Cases before the city justice arising under the city ordinances shall be tried and determined by the justice without the intervention of a jury except in cases where under the provisions of the ordinances of the city imprisonment for a longer period than ten days is made a part of the penalty, or the maximum fine shall be twenty dollars or over, and the defendant shall demand a trial by jury before the commencement of such trial. . . .

C.L. § 937 (1887). If a defendant was found guilty of violating a municipal ordinance in a case before a city justice of the peace, the Compiled Laws authorized an appeal to district court. C.L. § 933 (1887). When the defendant appealed the decision to district court, the Compiled Laws required the district court try the action

"anew." C.L. § 6131 (1887). On appeal, the Compiled Laws provided the district court would determine issues of law, while "[i]ssues of fact must be tried by a jury." C.L. §§ 7320, 7372 (1887).

[¶ 11] Seven months before the adoption of the state constitution, the territorial legislature amended the Compiled Laws to provide "police justice[s]" with jurisdiction over municipal ordinance violations rather than city justices of the peace. 1889 Dakota Territory Sess. Laws, ch. 33, § 5; *Fettig,* 1999 ND 193, ¶ 10, 601 N.W.2d 247. However, the territorial legislature did not alter the right of trial by jury for municipal ordinance violations, nor the right to appeal an adverse decision to the district court. Therefore, at the time the state constitution was adopted, the Compiled Laws provided police justices with original jurisdiction over municipal ordinance violations and recognized the right of trial by jury where the ordinance authorized imprisonment for ten or more days or a fine of twenty or more dollars. If found guilty of violating the municipal ordinance, the defendant could appeal the conviction to the district court where the right of trial by jury also existed. "Against this background, the framers of our constitution guaranteed that the right to a jury trial 'shall . . . *remain* inviolate.'" *Fettig,* at ¶ 11 (citing N.D. Const. of 1889, art. I, § 7) (emphasis added).

### III.

[¶ 12] We hold Riemers has the constitutional right to a jury trial for the alleged violation of a noncriminal municipal traffic ordinance that is punishable by a twenty-dollar fine. The Constitution of North Dakota preserves the right of trial by jury "as defined by the statutes which existed prior to and at the time of . . . adoption." *Barry,* 13 N.D. 131, 99 N.W. at 772. *See also R.Z.,* 415 N.W.2d at 488 n.

1; *Altevogt,* 353 N.W.2d at 764; and *Smith,* 17 N.D. 120, 115 N.W. at 77. At the time the state constitution was adopted, territorial law provided the right to a jury trial for alleged violations of municipal ordinances where the ordinance authorized a punishment of imprisonment for ten or more days or a fine of twenty or more dollars. In this case, Riemers is accused of violating a Grand Forks municipal ordinance for which the City Code provides a twenty-dollar fine. Therefore, because he is accused of violating a municipal ordinance for which the fine is twenty or more dollars, we conclude Riemers has the right to a jury trial under the constitutional guarantee that the right of trial by jury shall remain inviolate.[1]

[¶ 13] We reject the City of Grand Forks' argument that this case is directly analogous to *State v. Brown,* 2009 ND 150, 771 N.W.2d 267. In *Brown,* the district court held a bench trial regarding a citation issued to Brown for violating a Cass County animal control ordinance. *Id.* at ¶ 44. Like Riemers, Brown argued the state constitution provided her the right to a jury trial because the ordinance authorized a fifty-dollar fine and the constitutional right of trial by jury applied to violations of municipal ordinances where the ordinance authorized a fine of twenty or more dollars. *Id.* at ¶ 46. This Court held Brown did not have the right to a jury trial because the animal control ordinance created a criminal infraction, whereas criminal law only recognized misdemeanors and

felonies at the time the state constitution was adopted. *Id.* at ¶¶ 49–50. This Court stated the legislature intended for infractions to constitute "an entirely new category of lesser criminal offenses with its own unique procedural requirements." *Id.* at ¶ 50. Because the legislature created a new category of crimes and procedures which did not exist at the time the state constitution was adopted, we held "a person charged with violating an infraction-level offense, including a county ordinance creating an infraction-level offense, which carries no possibility of imprisonment, is not entitled to a jury trial under N.D. Const. art. I, § 13." *Id.* at ¶ 52. *See also In re Anderson,* 2007 ND 50, ¶ 19, 730 N.W.2d 570 ("The involuntary civil commitment provisions of N.D.C.C. ch. 25–03.3 create a statutory proceeding that was unknown at the time our constitution was adopted in 1889. Consequently, there is no right under article I, § 13, to a jury trial in proceedings under this chapter."); *State v. $17,515.00 in Cash Money,* 2003 ND 168, ¶ 10, 670 N.W.2d 826 ("It is axiomatic that, because there was no available action in this state for forfeiture of proceeds from illegal drug transactions at the time the constitution was adopted, there was no right to a jury trial in such an action."); *In re R.Y.,* 189 N.W.2d 644, 651 (N.D.1971) (holding the state constitution does not provide juveniles with the right of trial by jury in delinquency proceedings because juvenile courts did not exist prior

---

1. It is the *right* to a jury trial that remains inviolate, not the place the jury trial occurs. "Inviolate" has reference to the *right*. It is the "right" which must not be impaired.... [Inviolate] connotes no more than freedom from substantial impairment, and the Legislature has a right to make any reasonable regulation or condition respecting the enjoyment of trial by jury, provided only that the essentials of a jury trial, as known to the common law, remain unchanged....

*State v. Norton,* 64 N.D. 675, 255 N.W. 787, 792 (1934) (internal quotations omitted) (emphasis added). For example, the legislature eliminated county courts in 1991. *See* 1991 N.D. Sess. Laws ch. 326, § 203. Since eliminating county courts, a right to jury trial formerly exercised in county court is now exercised in district court. The right, however, remains inviolate.

to the constitution's adoption). The City argues territorial law did not comprehensively regulate traffic prior to the adoption of the state constitution and the legislature created a new category of offenses with unique procedural requirements by adopting N.D.C.C. ch. 39–06.1, entitled "Disposition of Traffic Offenses," in 1973. *See* N.D. Sess. Laws ch. 301 (1973). Therefore, like *Brown,* the City argues we should conclude no constitutional right to a jury trial exists.

[¶ 14]  However, the City misstates the nature of traffic regulations at the time the state constitution was adopted. The Compiled Laws (1887) provided cities with the authority "[t]o regulate traffic ... upon the streets" and "the speed of horses and other animals, vehicles, cars and locomotives within the limits of the [city]." C.L. § 885(20)-(21) (1887). "[T]o carry into effect the powers granted to cities," the Compiled Laws permitted cities to establish fines and penalties for violations of municipal ordinances, "*provided,* no fine or penalty shall exceed one hundred dollars, and no imprisonment shall exceed three months, for one offense." C.L. § 885(79) (1887) (emphasis in original). If a person failed to pay the fine, a city could jail the individual "until such fine, penalty and cost shall be fully paid; *provided,* that no such imprisonment shall exceed three months for any one offense." C.L. § 888 (1887) (emphasis in original). Thus, at the time the state constitution was adopted, territorial law permitted cities to comprehensively regulate traffic, establish fines for violations of traffic ordinances, and imprison persons for failing to pay the fines.

[¶ 15]  In fact, the City of Grand Forks adopted traffic ordinances as early as 1887. The City prohibited persons from driving "any wagon, carriage, dray, cart or other vehicle or conveyance ... along any of the streets, avenues, alleys or public thorough-

fares of this city at a faster gait, pace or speed than six miles an hour...." City Charter and Ordinance of the City of Grand Forks, Dakota § 121 (1887). The ordinance provided for a "fine of not less than five dollars nor more than fifty dollars for each offence." *Id.* Grand Forks also prohibited persons from riding or driving "any horse, team, wagon, cart, sled, sleigh or other vehicle upon or over or across any sidewalk, except at the regular crossings...." City Charter and Ordinance of the City of Grand Forks, Dakota § 82 (1887). The City authorized a fine of five to twenty-five dollars for violating this ordinance. *Id.* If the City cited a person for violating these traffic ordinances, the person had the right to a jury trial before the city justice of the peace because the maximum fines exceeded twenty dollars. *See* C.L. § 937 (1887).

[¶ 16]  We are unpersuaded by the City's argument that, by adopting N.D.C.C. ch. 39–06.1, the legislature created a new category of crimes and procedures. Territorial law specifically permitted cities to regulate vehicular traffic and to provide penalties for violations of traffic ordinances. As early as 1887, Grand Forks in fact regulated the speed and location of vehicular traffic, and the fines imposed for violating these ordinances were high enough to trigger the right of trial by jury under territorial law. Therefore, we decline to apply the reasoning of *Brown* to this case.

[¶ 17]  We are also unpersuaded by the City's argument that Riemers does not have a constitutional right to a jury trial because he was cited for violating a petty offense. The right of trial by jury under the U.S. Constitution does not apply to "petty" offenses. *Fettig,* 1999 ND 193, ¶ 6, 601 N.W.2d 247 (citing *Duncan v. Louisiana,* 391 U.S. 145, 159, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968)). In deter-

mining whether an offense is petty or serious, courts focus on the maximum prison term authorized for committing the offense. *Fettig,* at ¶ 6 (citing *Lewis v. United States,* 518 U.S. 322, 326, 116 S.Ct. 2163, 135 L.Ed.2d 590 (1996)). Where the authorized prison term is less than six months, courts presume the offense is petty unless the legislature authorized additional penalties severe enough to indicate it considered the offense serious. *Fettig,* at ¶ 6 (citing *Lewis,* at 326, 116 S.Ct. 2163).

■ [¶ 18] Under the Grand Forks City Code, the ordinance Riemers violated is punishable by a twenty-dollar fine. Grand Forks City Code § 8–1503(7). The City Code does not directly authorize imprisonment for a violation of the ordinance. *Id.* Therefore, the City is likely correct that Riemers does not have a right to a jury trial under the U.S. Constitution because following too closely is a petty offense. However, "we may provide the citizens of our state, as a matter of state constitutional law, greater protection than the safeguards guaranteed in the Federal Constitution." *Altevogt,* 353 N.W.2d at 766 (citing *Oregon v. Hass,* 420 U.S. 714, 719, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975); *State v. Nordquist,* 309 N.W.2d 109, 113 (N.D.1981); and *State v. Matthews,* 216 N.W.2d 90, 99 (N.D.1974)). Because we conclude Riemers has the right of trial by jury under the state constitution, whether Riemers has such right under the U.S. Constitution does not affect our decision.

■ [¶ 19] While the constitutional right of trial by jury for violations of municipal ordinances depends upon the nature of the right at the time the state constitution was adopted, we believe a fuller historical perspective is also helpful. Twelve years before statehood, the Revised Codes of the Territory of Dakota (1877) provided the right to a jury trial before justices of the peace for all munici-

pal ordinance violations, provided the defendant demanded a jury. R.C., Pol.C. ch. 25, § 71 (1877). By 1887, the territorial legislature limited the right of trial by jury to cases where the municipal ordinance authorized a punishment of ten or more days' imprisonment or a fine of twenty or more dollars. C.L. § 937 (1887). Approximately seven months before statehood, the territorial legislature granted jurisdiction over municipal ordinance violations to "police justice[s]," rather than city justices of the peace. 1889 Dakota Territory Sess. Laws, ch. 33, § 5. Despite this change, territorial law provided the same right of trial by jury before police justices as it had before city justices of the peace.

[¶ 20] The first state code did not modify this right. Like territorial law, the Revised Codes of the State of North Dakota (1895) provided police magistrates with jurisdiction over municipal ordinance violations and gave defendants the right to a jury trial where the ordinance authorized ten or more days' imprisonment or a fine of twenty or more dollars. *See* N.D.R.C. § 2206 (1895). Thereafter, the right of trial by jury for violations of municipal ordinances remained largely unchanged through the adoption of the North Dakota Revised Code of 1943, *see* N.D.R.C. § 40–1815 (1943), and the North Dakota Century Code, *see* N.D.C.C. § 40–18–15 (1961). In 1965, the state legislature amended N.D.C.C. ch. 40–18 to eliminate the position of police magistrate and to provide "municipal judge[s]" with exclusive jurisdiction over alleged municipal ordinance violations. *See* 1965 N.D. Sess. Laws ch. 286. Nevertheless, despite the change from police magistrates to municipal judges, N.D.C.C. § 40–18–15 still provided individuals with the right to jury trials for municipal ordinance violations under the same circumstances as before. *See* 1965 N.D. Sess. Laws ch. 286, § 13. In 1973,

the state legislature amended N.D.C.C. § 40–18–15 to eliminate the language regarding the right of trial by jury where the municipal ordinance authorized imprisonment for ten or more days or a fine of twenty or more dollars. *See* 1973 N.D. Sess. Laws ch. 327, § 1. The amended statute provided: "An action for the violation of a city ordinance shall be tried and determined by the municipal judge, without the intervention of a jury." *Id.* Since the 1973 amendment, municipal courts have lacked the authority to hold jury trials. *Fettig,* 1999 ND .193, ¶ 4, 601 N.W.2d 247.

[¶ 21] Thus, for more than a decade prior to the adoption of the state constitution, territorial law provided the right of trial by jury for municipal ordinance violations where the ordinance authorized imprisonment for ten or more days or a fine of twenty or more dollars. Although the legislature changed the courts having original jurisdiction over municipal ordinance violations, the statutory right of trial by jury for such violations remained predominantly unchanged for more than seven decades after the constitution was adopted. While the legislature amended N.D.C.C. § 40–18–15 in 1973 to eliminate the statutory authority of municipal courts to conduct jury trials, the legislature cannot eliminate a constitutionally-protected right, including the right to a jury trial. *Barry,* 99 N.W. at 770 (stating the legislature cannot "destroy by legislation . . . any of the substantial elements of the right of jury trial" secured by the state constitution).

[¶ 22] When the legislature amended N.D.C.C. § 40–18–15 in 1973, it did not intend to eliminate the right of trial by jury for municipal ordinance violations. *See Hearing on H.B. 1493 Before the Senate Judiciary Comm.,* 43rd N.D. Legis. Sess. (Feb. 21, 1973) (testimony of Rep.

Richard Hentges, sponsor of H.B. 1493) [*Hearing on H.B. 1493* ]. Thomas A. Davies, municipal court judge for the City of Fargo, originally proposed the amendment. *Id.* In a letter to Rep. Hentges and other legislators, Davies clearly stated the amendment did not eliminate the right of trial by jury for municipal ordinance violations because a defendant could still exercise the right on appeal to the district court:

> The amendment basically eliminates the intervention of a jury during trial in a municipal court and clearly states in the preamble that nothing in the section should be construed as an abolition of a defendant's right to a trial by jury because in the event of an adverse verdict in a municipal court trial, a defendant may exercise his right of appeal [to the district court], and among the inherent and constitutionally guaranteed rights of the defendant upon appeal from the determination of a municipal judge is the right to a trial by jury.

January 19, 1973 letter from Davies to Rep. Hentges (included in legislative record from *Hearing on H.B. 1493* ). As the legislature recognized in 1973, while defendants may have the inviolate right of trial by jury, that right does not include the particular court in which the right is exercised.

## IV.

[¶ 23] We note the Supreme Court of South Dakota has previously considered the issue raised by this case. Prior to being admitted into the United States as separate states on November 2, 1889, North Dakota and South Dakota comprised Dakota Territory and were governed by the Compiled Laws of the Territory of Dakota (1887). In addition, both states' constitutions provide the right of trial by jury shall "remain inviolate." N.D. Const. art. I, § 13; S.D. Const. art. 6,

§ 6. Because both states were governed by the Compiled Laws immediately before statehood, the inviolate right to a jury trial should theoretically be the same in both. As detailed below, the South Dakota Supreme Court initially held its state constitution preserves the right of trial by jury for alleged violations of municipal ordinances where the ordinance authorizes imprisonment for ten or more days or a fine of twenty or more dollars. However, three years later, the court overturned its prior decision and held its state constitution does not protect such right.

[¶ 24] In *City of Brookings v. Roberts*, 88 S.D. 623, 226 N.W.2d 380, 381 (1975) (quoting *Shaw et al. v. Shaw*, 28 S.D. 221, 133 N.W. 292, 293 (1911)), the South Dakota Supreme Court recognized "the constitutional provision of this state 'that trial by jury shall remain inviolate' ... applies to law cases triable by jury as a matter of right as theretofore existed in the territory of Dakota prior to the going into effect of the Constitution of this state." Because the Compiled Laws (1887) provided the right of trial by jury for violations of municipal ordinances when the ordinance authorized imprisonment for ten or more days or a fine of twenty or more dollars, the court concluded its state constitution preserved the right under the same circumstances. *Roberts*, at 383. The court stated:

> As can be seen from the status of territorial law at the time of adoption of our Constitution the right to a jury trial existed in all violations of city ordinances under the provisions of which imprisonment for more than ten days or a fine of more than twenty dollars is made a part of the penalty and that became a matter of constitutional right.

*Id.* However, the South Dakota court's recognition of this constitutional right was short lived.

[¶ 25] In *State v. Wikle*, 291 N.W.2d 792, 794 (S.D.1980), the South Dakota Supreme Court overruled *Roberts* and held the South Dakota constitution did not preserve the right to a jury trial for violations of municipal ordinances where the ordinance authorized imprisonment for ten or more days or a fine of twenty or more dollars. The court first noted the discussion of the constitutional right to a jury trial in *Shaw, supra*, was dicta because it had no bearing on the ultimate decision in the case. *Wikle*, at 793. Rather than affirming the *Roberts* majority, the court stated the concurring opinions in *Roberts* accurately described the nature of the right to a jury trial under the state constitution. *Id.* Both concurring opinions claimed the right of trial by jury for the violation of a municipal ordinance exists under South Dakota's constitution only if jail may be directly imposed. *Id.* at 793–94 (citing *Roberts*, 226 N.W.2d at 383–84 (C.J. Dunn and J. Doyle, concurring separately)). The South Dakota court also approvingly cited the Alaska Supreme Court's decision in *Baker v. City of Fairbanks*, 471 P.2d 386, 401–02 (Alaska 1970) (holding the Alaska Constitution provides the right of trial by jury for "criminal prosecutions" where imprisonment may be directly imposed, but not for "innocuous offenses," such as "minor traffic violations"). *Id.* Further, in overturning the *Roberts* majority, the South Dakota Supreme Court stated:

> Even if we were to accept the analysis of legislative history offered in *Roberts*, we could not give literal endorsement to an 1887 law that referred to $20 as the demarcation line for jury trials. This law was written at a time when traffic laws were nonexistent and the purchasing power of a dollar was probably twenty times or more what it is today.... The rule of law that incorporated exist-

ing statutory law into our state constitution upon its adoption should be followed in matters of legal principle, but it becomes absurd when followed literally in regard to monetary amounts.

*Wikle,* at 794.

[¶ 26] Although *Wikle* stands as South Dakota's present law regarding the right of trial by jury for municipal ordinance citations under that state's constitution, we are unpersuaded by its reasoning. Despite precedent stating the constitution preserves the right of trial by jury as it existed at the time the constitution was adopted, the South Dakota Supreme Court in *Wikle* did not analyze the nature of the right under territorial law in 1889. In suggesting traffic laws were nonexistent at the time South Dakota adopted its constitution, the South Dakota court overlooked C.L. § 885(20)-(21) (1887). In addition, the second justification given by the court, while undoubtedly more accurate, is no less problematic. The South Dakota court stated the purchasing power of twenty dollars in 1887 "was probably twenty times or more" than the purchasing power of twenty dollars in 1980, the year of its decision. *Wikle,* 291 N.W.2d at 794. If the line is not fixed and this Court does not "give literal endorsement" to the test by which we hold the right to a jury trial inviolate, what is the principle upon which we determine where that line is? If the right fluctuates with inflation, how is the right determined? These questions are not insignificant, nor are they limited to issues arising under our state's constitutional right to a jury trial. *See The Twenty Dollar Clause,* 118 Harv. L. Rev. 1665 (2005) (discussing the right to a jury trial in civil cases under the Seventh Amendment of the U.S. Constitution, which provides: "In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved...."). We hold to our prior jurisprudence, that the right of trial by jury is determined by the laws as they existed at the time the Constitution of North Dakota was adopted, and decline to follow the South Dakota Supreme Court. The people of North Dakota may change this right if they choose.

## V.

[¶ 27] We hold the Constitution of North Dakota provides Riemers with the right of trial by jury for a noncriminal municipal traffic citation punishable by a twenty-dollar fine and remand the case back to the Grand Forks municipal court for further proceedings consistent with this opinion.

[¶ 28] GERALD W. VANDE WALLE, C.J., and DANIEL J. CROTHERS, J., concur.

SANDSTROM, Justice, dissenting.

[¶ 29] Because the majority's interpretation is unreasonable and inconsistent, I respectfully dissent.

## I

[¶ 30] The Constitution of North Dakota preserves the right to a jury trial in cases for which it existed at statehood. *Smith v. Kunert,* 17 N.D. 120, 115 N.W. 76, 77 (1907). "The right of trial by jury shall be secured to all, and remain inviolate." N.D. Const. art. I, § 13. At statehood, the law of Dakota Territory, which became the law of North Dakota, provided for a jury trial for serious, "non-petty," violations of municipal ordinances. *See* C.L. § 937 (1887). On the basis of this interpretation, which is consistent with the interpretation of the United States Supreme Court and other courts as discussed below, Riemers is not entitled to a jury trial.

[¶ 31]   The majority, on the other hand, looks at the words of the statute and comes to a different conclusion.  The statute provides:

> *Cases before the city justice* arising under the city ordinances shall be tried and determined by the justice without the intervention of a jury except in cases where under the provisions of the ordinances of the city *imprisonment for a longer period than ten days* is made a part of the penalty, or the *maximum fine shall be twenty dollars* or over, and the defendant shall demand a trial by jury before the commencement of such trial....

C.L. § 937 (1887) (emphasis added).  Although this reflected the difference between serious and petty offenses at that time, and $20 in 1887 was the equivalent of approximately $400 today, *see State v. Wikle*, 291 N.W.2d 792, 794 (S.D.1980), the majority says we must take $20 as the literal requirement.

[¶ 32]   But if we are to take the statutory language literally, it applies only to "cases before the city justice."  This judicial official has been abolished.  *See* 1889 Dakota Territory Sess. Laws, ch. 33, § 5 (changing the term "city justice" to "police justice"); 1965 N.D. Sess. Laws ch. 286 (abolishing the position of police magistrate and providing municipal judges with exclusive jurisdiction over municipal ordinance violations).

[¶ 33]   If we take the entire sentence literally, Riemers is not entitled to relief because his case is not before a city justice.  If we treat the entire provision using its modern equivalents, Riemers is not entitled to a jury trial because the maximum fine is a petty amount.

[¶ 34]   Only by applying one rule (modern equivalent) to the first half of the sentence and the other rule (literal language) to the second half of the sentence does the majority reach its conclusion.

## II

### A

[¶ 35]   The analysis of the United States Supreme Court is consistent with the conclusion Riemers is not entitled to a jury trial.

[¶ 36]   The United States Supreme Court has held that the constitutional right to a jury trial in criminal prosecutions extends only to the prosecution of serious crimes, as opposed to petty offenses.  *See District of Columbia v. Clawans*, 300 U.S. 617, 57 S.Ct. 660, 81 L.Ed. 843 (1937); *District of Columbia v. Colts*, 282 U.S. 63, 51 S.Ct. 52, 75 L.Ed. 177 (1930); *Callan v. Wilson*, 127 U.S. 540, 8 S.Ct. 1301, 32 L.Ed. 223 (1888).  The Supreme Court has declined to establish a precise line of demarcation for petty offenses, *see Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), but a plurality of the Court has held that a crime is not "petty" when the defendant faces incarceration of more than six months.  *Baldwin v. New York*, 399 U.S. 66, 90 S.Ct. 1886, 26 L.Ed.2d 437 (1970).  That rule was extended slightly in *Blanton v. North Las Vegas*, 489 U.S. 538, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989), in which the Supreme Court held a defendant accused of a crime that does not have a possible penalty of six or more months' incarceration is entitled to a jury trial only if he can demonstrate that any additional statutory penalties, viewed in conjunction with the maximum period of incarceration, are so severe that they clearly reflect a legislative determination that the offense is a serious one.

### B

[¶ 37]   The analysis of the South Dakota Supreme Court in interpreting the same

statutory language and similar constitutional language is consistent with the conclusion Riemers is not entitled to a jury trial.

[¶ 38] South Dakota, in addition to North Dakota, was governed by the Compiled Laws of the Territory of Dakota prior to 1889. As the majority notes, "Because both states were governed by the Compiled Laws immediately before statehood, the inviolate right to a jury trial should theoretically be the same in both."

[¶ 39] In *State v. Wikle*, 291 N.W.2d 792 (S.D.1980), the South Dakota Supreme Court held a defendant was not entitled to a jury trial when the violation of a city ordinance provided for a maximum penalty of $100 and no possibility of incarceration. The court, overruling *City of Brookings v. Roberts*, 88 S.D. 623, 226 N.W.2d 380 (1975), stated that even if it were to accept the analysis of legislative history in *Roberts*, it "could not give literal endorsement to an 1887 law that referred to $20 as the demarcation line for jury trials." *Wikle*, 291 N.W.2d at 794. The court stated the law was written at a time when traffic laws were nonexistent and "the purchasing power of a dollar was probably twenty times or more what it is today." *Id.* It concluded, "The rule of law that incorporated existing statutory law into our state constitution upon its adoption should be followed in matters of legal principle, but it becomes absurd when followed literally in regard to monetary amounts." *Id.* The court noted that the United States Supreme Court has held petty offenses do not require a jury trial, and concluded an offense with a maximum possible fine of $100 cannot be viewed as serious. Finally, the court expressed its approval of the concurrences in *Roberts*, stating that for any violation of a state law or city ordinance for which a direct penalty of incarceration can be imposed, the accused is entitled to a jury trial.

[¶ 40] In *State v. Auen*, 342 N.W.2d 236 (S.D.1984), the South Dakota Supreme Court extended its *Wikle* opinion by holding that in prosecutions of offenses with maximum authorized jail sentences of less than six months, a court may deny a jury trial request if the court assures the defendant that no jail sentence will be imposed.

C

[¶ 41] The South Dakota Supreme Court also considered the Alaska Supreme Court decision which provides analysis consistent with the conclusion that Riemers is not entitled to a jury trial.

[¶ 42] In *Baker v. City of Fairbanks*, 471 P.2d 386 (Alaska 1970), the Alaska Supreme Court considered the right to jury trials for city ordinance violations. The court noted there "is nothing ambiguous" about the state constitutional language granting a jury trial in "all criminal prosecutions." *Baker*, 471 P.2d at 397. The court noted that the historical development influencing the concept of what constitutes a petty offense was examined by Frankfurter and Corcoran in *Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury*, 39 Harv. L. Rev. 917 (1926). *Id.* at 391. Frankfurter and Corcoran surveyed the legal history of offenses handled in a summary fashion in England and in the American colonies and noted that while the Constitution refers to "all crimes" and the Sixth Amendment refers to "all criminal prosecutions," there were certain offenses, familiar to the framers of our federal and state constitutions, which were considered to fall within an implied exception to the constitutional guarantee. *Id.*

[¶ 43] The Alaska Supreme Court held that in any "criminal prosecution," which it defined as one in which a direct penalty

could be incarceration, whether under state law or for violation of a city ordinance, the accused is entitled to a jury trial. *Id.* at 401–02. The court also included offenses that may result in the loss of a valuable license, such as a driver's license or a professional license. *Id.* Finally, the court included offenses which, even if incarceration is not a possible punishment, "still connote criminal conduct in the traditional sense of the term." *Id.* The court specifically excluded "such relatively innocuous offenses as wrongful parking of motor vehicles, *minor traffic violations,* and violations which relate to the regulation of property, sanitation, building codes, fire codes, and other legal measures which can be considered regulatory rather than criminal." *Id.* (emphasis added).

### III

[¶ 44]   I would affirm, concluding Riemers has no right to a jury trial.

[¶ 45] MARY MUEHLEN MARING, J., concurs.